Bland, Chancellor.
This case standing ready for hearing, the solicitors of the plaintiffs having been heard, and no counsel appearing for the defendant, the proceedings were read and considered.
It appears, that the late Samuel Owings left, at the time of his death, a large estate, consisting of real and personal property; and, *291 among others of his children who survived him, are two of the plaintiffs, Rebecca and Urath, and the defendant William. His daughter Rebecca being unable, by reason of her mental imbecility, to take care of herself, he made for her a special provision by his will, in connexion with the devise to his son William; to whom he gave a large portion of his real estáte. “ To hold the same,” (these are the words of "this testator,) “to him the said William Owings, his heirs and assigns, for ever, upon these express conditions, that he and they, or the person or persons to whom the estate devised to the said William Owings, may eventually pass, maintain my daughter Rebecca, or pay sixty pounds current money a year for her maintenance during her natural life.” This will bears date on the 7th of May, 1803, and the testator' must have died soon after, although it is not stated when; because it appears to have been proved on the 25th of June, in the same year.
Rebecca, after the death of her father, continued to reside with her mother, the late Deborah Owings, until her death, which happened in December, 1810; and was taken care of and altogether maintained by her. The late Deborah, under an apprehension that the provision made by Rebecca's father for her maintenance, might not be regularly applied, or that it might be inadequate, by her will, also made provision for her support. After some specific legacies, she gives all the residue of her estate to her eight daughters by name, including Rebecca, to be equally divided; and then says :— It is my will and desire, that the portion of my estate, above bequeathed to my daughter Rebecca shall, so soon' as convenient after my decease, be laid out by my executors, herein after named, in the purchase of bank stock; and the said stock, when so purchased, shall be held in the name of my said daughter Rebecca. And I do hereby authorize and empower my daughter Urath Cromwell to demand and receive the interest or dividends arising from the said bank stock, and to apply the same to the support and maintenance of my said daughter Rebecca during her natural life; it being understood, that my said daughter Rebecca is to be removed to the house of my said daughter Urath Cromwell, and from and after the decease of my said daughter Rebecca, I do give and bequeath the bank stock aforesaid unto my said daughter Urath Cromwell, as a compensation for her trouble in providing for and taking care of my said daughter Rebecca.” After the death of this testatrix, Rebecca went to reside with the plaintiffs, Cromwell *292 and wife, by whom she has been taken cave of and maintained ever since.
The bill does not introduce Cromwell and wife as the next friends of Rebecca, but merely in the character of co-plaintiffs; and then states, “ that Rebecca being, by the providence of God, gifted from her birth with but a small share -of reason and judgment, and incapable, of herself, without the help and kindness of her friends, to take care of herself, or to manage and dispose of property.” But it is not alleged, nor does it appear, that she has, by any judicial proceedings, been found to be a person of unsound mind, or non compos mentis. Nor do the plaintiffs Cromwell and wife show, or claim any interest whatever in the matter in controversy.
All these facts are admitted by the defendant; and he also admits, that he has never, at any time, maintained, or paid any thing towards the maintenance of Rebecca. But he alleges, that he has always been ready and wdlling to maintain her, when called upon; and, that he would have done so, if he had been permitted. The acquittance from his mother, which he has exhibited, and seems to place some reliance upon, may be at once laid aside as having no material bearing upon this case.
The plaintiffs, by their bill, pray specially, that the defendant William Owings may be compelled to pay to John Cromwell and TJrath his wife, for the use and benefit of the said Rebecca Owings, •whatever may be now due, or may hereafter become due to her under her late father’s will: and generally, that the plaintiffs may have such other relief as may be agreeable to equity and right.
Thus it appears, that justice is demanded in behalf of one of that unfortunate class of persons who are held to be most peculiarly under the guardianship of this court. The case is of a delicate and anomalous nature; yet it is one in which, it is quite evident, that relief, by some means or other, ought to be granted. There are, however, difficulties in the way, which must be overcome or removed.
The first of them which presents itself, is as to the parties. If all those who have an interest in the subject, and who ought to have been brought before the court, have not been made parties, it may be taken advantage of by demurrer, by plea, or at the hearing. On the other hand, if a person be made a defendant unnecessarily, the bill may be dismissed as to him, and proceed as to the others, (a) *293 The predicament of this case is different. The right is admitted to be exclusively in one only of the plaintiffs; and the special prayer is, that the relief may be decreed to the two, who have no interest, for the use of the one who has the right. Cromwell and wife, it is clear, can have none, or a very remote interest in the matter now in controversy. The care of Rebecca’s person was commended to them by the last will of her mother. But it is not even intimated, that they have been thus clothed with the character of her testamentary guardians; and there is in fact not the least foundation for their assuming any such office. They are not the prochein ctmys of Rebecca, because they do not so present themselves; nor do they state her to be an infant, feme covert, or lunatic; or to be in that situation in which they would be authorized to accompany her into court as prochein amys. It may be inferred from what is said in one of the books of practice, that a lunatic may sue by prochein amy ;(b) the expressions of the compiler are, however, unwarranted, in that sense, by any adjudged case whatever. But according to the loose proceedings of the Land Office, it seems, that a warrant of resurvey was obtained by his next friend for the benefit of one who was then non compos mentis, although not found to be so by inquisition, (c) A lunatic, that is, one who has been found and returned to be non compos mentis, can only sue by his committee.(d) Rebecca has not been judicially declared a lunatic; and consequently she can have no committee by whom to institute any suit.
. It follows, therefore, that if there are no other principles upon which Cromwell and wife may be associated in this suit with Rebecca, no relief can be granted upon this bill as it now stands, but it must be amended or dismissed, (e)
Generally and technically speaking, those only are called lunatics who have been so found and returned. Without an inquest and return thereon, no one can be judicially treated as a lunatic, and be debarred of his liberty, or have the management of his property taken from him. The power to divest a citizen of his personal freedom and of his property is one of a most extraordinary and delicate nature; and should, therefore, never be exercised without observing every precaution required by the law. But, although this court will, in no case, undertake to go all lengths; *294 and to confine or dispose of the person of any one, as a lunatic, until he has, upon solemn inquisition, been found to be non compos mentis; yet it will grant relief and protection to such persons without and previous to their being adjudged to be non compos. On a proper application, the granting of a writ de lunático inquirendo is generally a matter of course; but still it is discretionary. If the Chancellor sees, that the interests of the subject of it, may be promoted, or his health benefited by withholding or suspending it, he may do so. The object of the Chancellor’s authority in matters of lunacy is to protect and take care of citizens, who are intellectually unfortunate; hence, it has been always so exercised as most effectually to attain that object.(f) If the execution of a commission of lunacy would in all probability have a tendency to confirm the lunatic in his insanity; or if his estate or income is too small to defray the expense of its execution; or if the object in view may be attained as safely and as fully in all respects without it; the execution of the inquisition may be suspended or dispensed with altogether. In short, there' are many instances in which the court will recognise and act upon the fact, that a person is in a partial or complete state of insanity, without requiring that fact to be established by a return to a writ de lunático inquirendo.(g)
I am of opinion, that this may be considered as one of those instances. The pension given to Rebecca by her father is not more than sufficient for her comfortable maintenance ; there is none to spare. It should certainly not be involved in any expense that can be avoided. The court is now only called on to enforce its payment and application; which may be as safely done now as after an inquisition has been taken; and certainly with more advantage and economy to Rebecca. I shall, therefore, proceed without requiring Rebecca to be formally declared a lunatic, and a committee of her person and estate to be appointed.
It is stated and admitted, that the plaintiff Rebecca is, in fact, so far insane as to be incapable of managing her property. Her late parents have made a provision for her maintenance. But to order the property they gave her to be paid into her own hands would not be extending to her proper and adequate relief and pro *295 tection; or rather it would amount to an absolute frustration of the good intentions of her parents. The relief must, therefore, be so conducted as to accomplish the object in view; that is, the maintenance of Rebecca. This cannot be done without the instrumentality of a trustee, who may be charged with the recéipt and application of the fund that has been appropriated for that purpose. One of her provident parents has made a selection of trustees for her; which, so far, seems to be conceded to have been a judicious one. I shall, therefore, confirm and act upon it. Not because I recognise the least right in the late Deborah Owings to appoint a trustee or guardian of the person or property of her daughter; but, because I believe it to be my official duty to protect persons in the condition in which I find Rebecca ; and to do so effectually, I must appoint and use a trustee or agent. And Cromwell and wife having been recommended by one of the parents of Rebecca, (for so I consider what is said in the will of the late Deborah,) as suitable trustees; and they having assumed that character; with which, upon a proper application I might have clothed them; I shall now sanction and confirm it to them; — upon the ground that this court always retrospectively sustains and ratifies that which has been useftdly and fairly done; and which it would have ordered to be done. I shall require John Cromwell to give bond for the faithful application of the money I shall decree to Rebecca, and order to be placed in his hands for her use. (h) And I shall accordingly regard this suit as having been instituted.by Rebecca Owings, together with John Cromwell and TJrath his wife as trustees of Rebecca, and thus pass over this first difficulty, as to the proper parties.
The next question is, what is the nature of the bequest of the late Samuel Owings to his daughter Rebecca ? ' The defendant seems to have a notion, that his father gave him the right to take charge of the person of his sister, and to maintain her as he thought proper. But the devise conveys no such idea; and if it did, it is clear, that although a father may appoint a guardian of his infant children; yet he cannot dispose of the custody of his adult children whether of sound mind or non compos mentis, in any way whatever, (i) It is evident, however, that the testator had no reference to the custody or the place of residence of his daughter; his expressions show, that his thoughts were directed exclusively to her maintenance, in whatever place she- might dwell. And that *296 maintenance he endeavours to make as unalterably and imperishably certain as the nature of things would admit. His son William was to take the estate he gave him expressly upon the condition, that he maintained Rebecca. William has taken the estate ; and, consequently, he has assumed this duty to Rebecca, and has become personally bound to her, in consideration of the estate he has thus taken and now enjoys. But this condition is not confined to William Owings personally and only j it is extended to “ the person or persons to whom the estate may eventually pass.” It is a condition, that runs with the land; and is a continuing charge upon it.(k) It is an incumbrance to which' the land is liable in the hands of every one, (not having a better title than the devisor,) during the life of Rebecca. This charge upon the land devised to William Owings cannot be deemed a rent of any description; nor can it properly be considered as an annuity ; because by an annuity the person alone is charged; no land is encumbered with it. But here the land is charged, and the person only in respect of the enjoyment of that land. This devise, therefore, has given to Rebecca a particular interest in the land.(l) It has imposed upon it an incumbrance, which follows it into the hands of William and every other holder during the life of Rebecca. It is a kind of legacy, the punctual payment of which this court will, and, perhaps, only can enforce.
It is then clear, that these plaintiffs are properly here; and that they ought to obtain relief: the mode in which it should be granted is the only remaining enquiry. Under the general prayer the court is left free to adopt any mode by which it can most readily and effectually administer that relief which the equity of the case demands. Where the relief asked is maintenance; a subsistance for one who is utterly unable to take care of herself; and it is determined to be equitably due; the court should, if practicable, leave no room to escape from or palter with its mandates. When helplessness is to be furnished with bread, the judgment which awards it should be clear, prompt, and easily enforced.
According to the common law, if a party brought his writ of annuity, and obtained judgment, that judgment stood as a security as well for the amount then due as for that which should thereafter *297 become due; and the payment of the future instalments might be enforced by fieri facias sued out within the year after every day of payment, though it might be many years after the judgment, (m) And in an action of debt upon a bond conditioned for the payment of certain sums of money on certain days by way of instalments; or upon a bill in equity for the arrears of an annuity; under a judgment for the penalty, or decree ,for the annuity, it was ruled, that the plaintiff should be allowed to levy by execution the sum found due at the trial; and that the judgment or decree should stand as a security for the future arrears, with liberty to apply from time to time to sue out fresh executions thereon.(n) So in this court, where alimony, or the payment of a certain sum annually had been decreed; the payments as they became due were enforced on petition and order in a summary way.(o) And where an estate has been mortgaged, the tenant for life in possession will be ordered to keep down the interest; and if he does not do so, a receiver may be put upon the estate with directions to take, and apply the rents and profits to the interest as it becomes due on the mortgage, and to pay the surplus to the tenant.(p)
Upon these suggestions and analogies, I shall decree, that William Owings forthwith bring into this court, or pay to the plaintiff John Cromwell, the whole amount now due, with interest on each annual sum as it became due until brought in or paid; and let the decree stand as a security for what may hereafter become due. The payment of the several sums, as they may hereafter become due, may, on petition, be enforced by a summary proceeding, either as against the person or personal property of William Owings ; and should he fail to pay the whole amount now decreed, or which may hereafter become due, I may be induced, on a proper application, to put a receiver upon the' estate devised to him, with authority to take and apply the rents and profits of it under the directions of the court.
The devise gives sixty pounds a year; but does not distinctly say from what date it is to be computed. This charge, from its nature, should take effect from the day of the death of the testator ;(q) but as -the date of that event has not been clearly shewn, I shall direct the years to be reckoned from the 25th *298 of June, 1803, the day on which the testator’s will was authenticated.
Whereupon it is decreed, that the report of the auditor be confirmed; that William Owings forthwith pay, or bring into this court to be paid unto John Cromwell, for the use of Rebecca Owings, the sum of $6476 91, together with legal interest on $3834 67, part thereof, from the 13th day of the present month, until brought in dr paid; that John Cromwell and Urath his wife aré hereby appointed trustees of the property of Rebecca, with full authority to demand, receive and apply the same towards her maintenance and for her benefit, under the directions of this court; which property and money they shall deliver up, pay or bring into-court, as may be required; and they shall render an account thereof on oath to this court from time to time, at least once in each and every year during the life of Rebecca, or until- the further order of this court; that John Cromwell, before he and the said Urath his wife shall enter upon the duties of - this trust, give -bond to the State, in the penalty of fifteen thousand dollars, with surety to be approved by the Chancellor, for the faithful performance of the trust reposed in them by this or any future decree or order in the premises ; — and that the defendant pay to the plaintiffs their full costs, to be taxed by the register.
Upon the application of the plaintiffs a fieri facias was on the 3d of April, 1828, ordered in general terms on this decree, but it does not appear that it was ever executed or returned. On the 6th of January 1830, John Cromwell, one of the plaintiffs, by his petition stated, that Rebecca Owings died on the 19th of August 1828; that he had maintained her in his house, with every comfort, during eighteen years prior to her death; and had often attended her in his professional character of a physician; that he had expended considerable sums of money in fees to lawyers, and costs of suit in-defending her rights and interests; and that no part of the amount decreed to her had been paid. Upon which he prayed, that the whole amount of his account might be ordered to be paid out of the sum of money so decreed to the late Rebecca Owings.
12th January, 1830. — Bland, Chancellor. — The sum decreed to-the late Rebecca Owings should have been paid to her trustees as-directed by the decree; but that not having been done, as is alleged by this petitioner, and the case having abated by the death of Rebecca, it must be regularly revived before the decree can be- *299 enforced for the benefit of any one. On the death of Rebecca all the rights and authority of the petitioner John Cromwell, as trustee, immediately ceased for every purpose whatever; except that of closing his accounts and delivering over the property, if any, in his hands, to the legal representatives of Rebecca. But it does not appear, that this petitioner, who was appointed by the decree as the trustee of Rebecca, ever gave bond or qualified as required.
The case was afterwards revived and. the amount ordered to be paid to John Cromwell, which order on appeal was affirmed, and so the case was closed.

 2 Mad. Chan. 174.

 1 Harr.Pra. Chan. 773.

 Land H. A. 150.

 2 Mad. Chan. 175; 1 Harr. Pra. Chan. 762.

 The King of Spain v. Machado, 4 Russ. 225.

 Ex parte Tomlinson, 1 Ves. & Bea. 57; Brodie v. Barry, 2 Ves. & B. 36.

 Sheldon v. Aland, 3 P. Will. 111, note; Lord Donegal’s case, 2 Ves. 408; Machin v. Salkeld, Dick. 634; Bird v. Lefevre, 4 Bro. C. C. 100; Eyre v. Wake, 4 Ves. 795; Ex parte Cranmer, 12 Ves. 446; Wartnaby v. Wartnaby, Jac. Rep. 377; 1 Mont. Dig. 39; Shelf. Lun. & Idiots, 436.

 Bird v. Lefevre, 4 Bro. C. C. 100.

 Ex parte Ludlow, 2 P. Will. 635.

 The Mayor of Congleton v. Pattison, 10 East, 130; Powell’s Case, Nelson, 202; Elliot v. Merryman, Barn. Ch. Rep. 82.

 Clark v. Ross, Dick. 529; Pow. Mort. 221, 1032; Co. Litt. 4, 122; West v. Biscoe, 6 H. &. J. 460; Attorney General v. Christ’s Hospital, 3 Bro. C. C. 165.

 2 Inst. 471; Gilb. Excu. 12.

 Ridgely v. Lee, 3 H. & McH. 94; Marshall v. Thompson, 2 Mun. 412; Sparks v. Garrigues, 1 Bin. 152; Ranelaugh v. Hayes, 1 Vern. 190.

 Darne v. Catlett, 6 H. & J. 476; Hewitt v. Hewitt, ante, 101.

 Pow. Mort. 300, note.

 2 Mad. Chan. 83.